UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT EUGENE PAYNE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21 CV 1048 ACL |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff Robert Eugene Payne, Jr. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Payne's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

### I.   Procedural History

Payne filed his application for DIB on May 16, 2019.   (Tr. 143-49.)   He claimed he

Page **1** of **16**

became unable to work on April 3, 2019, due to degenerative disc disease in the neck, two

fusions, bulging discs, lower back sciatica, right shoulder and knee problems, migraines, sleep

disorders, anxiety, and depression.   (Tr. 178.)   Payne was 50 years of age at his alleged onset of

disability date.   His application was denied initially.   (Tr. 108-12.)   Payne's claim was denied

by an ALJ on December 8, 2020.   (Tr. 19-32.)   On June 23, 2021, the Appeals Council denied

Payne's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision

of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Payne first argues that "substantial evidence does not support the ALJ's

finding that Dr. Parker's opinion was unpersuasive."   (Doc. 13 at 3.)   Payne next argues that

"the ALJ's finding that Payne could perform light work is not supported by substantial

evidence."   *Id.* at 9.

## II.   The ALJ's Determination

The ALJ first found that Payne met the insured status requirements of the Social Security

Act through December 31, 2024.   (Tr. 21.)   He stated that Payne has not engaged in substantial

gainful activity since his alleged onset of disability date.   *Id.*   In addition, the ALJ concluded

that Payne had the following severe impairments: degenerative changes of the cervical and

lumbar spines status-post surgical fusions.   *Id.*   The ALJ found that Payne did not have an

impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments.   (Tr. 24.)

As to Payne's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) except for the following
> nonexertional limitations that reduce the claimant's capacity for

> light work: can no more than occasionally climb ramps or stairs;
> can no more than occasionally climb ladders, ropes, or scaffolds;
> can no more than occasionally reach overhead with the bilateral
> upper extremities; can no more than occasionally stoop, crouch, or
> crawl; able to perform work that does not require more than
> frequent extension, flexion, or rotation of the neck; and able to
> work in environments where lighting is no brighter than found in
> the average office.

(Tr. 25.)

The ALJ found that Payne was unable to perform his past relevant work as a welder, but was capable of performing other jobs that exist in significant numbers in the national economy, such as collator operator, marker, and router.   (Tr. 30-32.)   The ALJ therefore concluded that Payne was not under a disability, as defined in the Social Security Act, from April 3, 2019, through the date of the decision.   (Tr. 32.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on May 16, 2019, the claimant
> is not disabled under sections 216(i) and 223(d) of the Social
> Security Act.

*Id.*

## III.   Discussion

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful

work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).

"RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Payne v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for

providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.

As noted above, the ALJ found that although Payne was unable to perform past relevant work as a welder, he was not disabled because he had the residual functional capacity ("RFC") to perform light work with a few nonexertional limitations.   When determining a claimant's RFC, under the revised Social Security regulations,[1] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).   Instead, the ALJ must assess the persuasiveness of all medical opinions[2] and prior administrative medical findings using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines.   *See* 20 C.F.R. § 404.1520c.   The ALJ must

---

[1]The new regulations are applicable to Payne's claims because he filed his appeal after March 27, 2017.   *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[2]A "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work.   20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

explain how he considered the factors of supportability and consistency in his decisions but is not statutorily required to discuss the other factors.   20 C.F.R. § 404.1520c(b)(2).

Payne argues that, in determining Payne's RFC, the ALJ failed to properly evaluate the opinion of treating orthopedist Jeffrey W. Parker, M.D.   He next contends that the ALJ's RFC determination is not supported by substantial evidence.

As described by the Eighth Circuit, "[o]ur role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).   "We consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."   *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) citing *Singh*, 222 F.3d at 451.   "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision."   *Id.   See also Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). The Commissioner's decision will not be reversed "merely because substantial evidence exists in the record that would have supported a contrary outcome."   *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

### 1.  Dr. Parker's Opinion

Dr. Parker completed a Medical Source Statement-Physical on February 14, 2020.   (Tr. 562-64.)   Dr. Parker expressed the opinion that Payne could occasionally lift less than ten pounds, rarely lift ten pounds, and could never lift any more than ten pounds; could rarely twist, stoop, balance, crouch, and crawl, but could never climb; could sit for thirty minutes before needing to change positions, and could sit a total of two hours in an eight-hour workday; could stand for thirty minutes before needing to change positions and could stand a total of two hours in an eight-hour workday; and would need to shift positions at will from sitting, standing, or

walking.   (Tr. 563.)   Dr. Parker found that Payne would need to take unscheduled breaks during

the workday for thirty-minute periods; would need to elevate his legs above the heart for 25

percent of the workday; would be off task for 25 percent of the workday due to his symptoms;

was capable of moderate stress work; and would miss work or leave early due to his condition

more than four days a month.   (Tr. 564.)

The ALJ indicated that he found Dr. Parker's opinions "unpersuasive."   (Tr. 30.)   He

stated that Dr. Parker's opinions consist primarily of a short-answer form or standardized, check-

the-box form, "in which he provided only limited supporting reasoning or clinical finding, which

gives his opinions less supportability and reduces their persuasiveness."   *Id.*   The ALJ also

found that Dr. Parker's opinions were not "fully consistent with the other medical evidence of

record."   *Id.*   He explained as follows:

> As discussed above, the record does reflect [] multiple but successful surgeries,
> partially supportive physical examinations, and partially supportive diagnostic
> imaging that would support the limitations in the determined residual functional
> capacity but Dr. Parker's more extreme opinions are not supported by the
> claimant's pattern of treatment, or other supportive objective evidence, which
> reduces their consistency and persuasiveness.

*Id.*

Payne argues that the ALJ's reasoning for finding Dr. Parker's opinion unpersuasive is

not supported by substantial evidence.   First, Payne contends that the ALJ's finding that Dr.

Parker did not provide supportive reasoning or clinical findings in support33 of his opinions is

contradicted by the record.   Next, he argues that the ALJ's finding that Dr. Parker's opinion was

not consistent with his own treatment is belied by the record.   Finally, Payne argues that Dr.

Parker's opinion was consistent with the other medical evidence of record.

With regard to supportability, Dr. Parker indicated that Payne had the following

diagnoses: cervical spondylosis; C2-3 status post-fusion; lumbar spondylosis, L3-4 status post-

fusion; and chronic neck pain with multiple level cervical spondylosis.   (Tr. 562.)   He listed Payne's symptoms as severe neck pain, severe low back pain, and generalized weakness.   *Id.* Dr. Parker characterized Payne's pain as follows: "severe neck pain which is constant and made worse with activity, chronic low back pain made worse with activity." *Id.*   Dr. Parker identified the clinical findings and objective signs as: "The patient has painful range of motion of the cervical and lumbar spine, tenderness of the cervical and lumbar paraspinal muscles." *Id.*   With regard to medication side effects, Dr. Parker stated that Payne's pain medications make him drowsy at times and make it difficult for him to operate machinery or use welding tools.   *Id.*

Dr. Parker did, therefore, provide an explanation for his findings that was more than just a "check-the-box" form.   The fact that Payne experiences constant neck and low back pain that is made worse with activity supports Dr. Parker's finding that Payne required breaks during the workday and would be off-task and miss work.   The ALJ did not specifically address Dr. Parker's explanation, other than remarking that Dr. Parker provided "only limited supporting reasoning or clinical findings."   (Tr. 30.)

The ALJ next found that Dr. Parker's own "pattern of treatment" and treatment notes generally reflect that Payne's treatment was effective at controlling his symptoms, which was inconsistent with Dr. Parker's opinion.

As an initial matter, the record reveals that Payne underwent the following back and neck surgeries:

| | |
|---|---|
| April 25, 2012: | Extreme lateral intervertebral fusion at L4-L5; laminectomy L4-L5 bilaterally, with partial medial facetectomies and foraminotomies L4-L5 bilaterally, and posterolateral fusion L4-L5 left, performed by Dr. Highland. |
| July 2, 2014: | Lumbar laminotomy of L3-L4 left, with partial medial facetectomy and foraminotomy L3-L4 left and exchange of bulging disk L3-L4 left, performed by Dr. Highland. |
| April 4, 2019: | Posterior cervical fusion C2-3, performed by Dr. Parker |

August 27, 2019:  Extreme lateral interbody fusion at L3-4 with revision posterior instrumentation and fusion at L4-5, performed by Dr. Parker.

August 25, 2020:  Anterior cervical diskectomy and fusion at C3-4, C4-5, and C5-6, performed by Dr. Parker.

(Tr. 624-25.)

The ALJ acknowledges that Payne's recurrent back and neck surgeries "certainly support the claimant's symptoms are genuine and could cause ongoing limitations," but found that the record "also reflects that his surgeries were generally effective in treating his symptoms."   (Tr. 26.)   He stated that the "location and nature of the claimant's surgeries support that they were effective as the recurrent nature was not due to failure but due to the claimant undergoing surgery to treat newer different symptoms."   *Id.*

As an example, the ALJ noted that Payne underwent a posterior cervical fusion at C2-3 in April 2019, after more conservative treatments for his upper neck pain failed.   (Tr. 26, 403)   The ALJ stated that Dr. Parker noted at the time that Payne may need a more extensive cervical fusion in the future, but it was not indicated at that time due to the lack of significant radicular symptoms.   (Tr. 26, 430.)   Six weeks following his cervical fusion, Payne reported that he was doing fine.   (Tr. 26, 432.)   The ALJ stated that Payne then focused on treatment of his back pain, and did not report further significant neck pain until May 2020   (Tr. 27.)   In May 2020, Payne reported increased neck and shoulder pain over the past month, but no weakness in his extremities.   (Tr. 27, 605.)   The ALJ noted that Payne's examination revealed cervical paraspinal tenderness, with eighty percent of expected neck motion.   *Id.*   X-rays of the cervical spine revealed no change in his previous C2-3 instrumentation, but confirmed severe degenerative disc disease at the other levels of C3-6.   (Tr. 27, 607.)   In August 2020, Payne underwent discectomies and fusions at C3-6, and by October 2020 he reported he was doing well and only complained of some neck stiffness.   (Tr. 27, 580, 644.)   The ALJ found that this

evidence was consistent with his finding that Payne's prior neck surgery was effective and that Payne needed a subsequent surgery to treat a different area.   (Tr. 27.)

The ALJ stated that Payne's lower back pain treatment "followed a similar pattern."   *Id.* Payne reported increased back pain in June 2019, at a follow-up regarding his posterior cervical fusion.   (Tr. 27, 387.)   An MRI of the lumbar spine showed a solid previous fusion at L4-5, but severe degenerative changes at L3-4.   (Tr. 27, 390.)   On examination, his lumbar spine was tender and he had limited range of motion.   *Id.*   Payne underwent a discectomy and fusion at L3-4 in August 2019.   (Tr. 27, 481.)   By March 2020, Payne reported that his lower back pain was "doing relatively well."   (Tr. 27, 601.)   He complained of intermittent neck pain, which prevented him from doing any vigorous activity.   (Tr. 601.)   On examination, Payne had limited cervical motion due to pain, seventy percent of expected lumbar motion due to the fusion, good coordination, no weakness, no sensory deficit, intact reflexes, full range of motion of the extremities, and normal strength and tone of the extremities.   (Tr. 27, 601-02.)   The ALJ summarized that Payne's pattern of treatment, physical examinations, objective testing, and diagnostic imaging are consistent with "an individual who is experiencing some symptoms that would be expected to cause slight limits with weakness and postural movements consistent with a range of light exertional work but does not reflect ineffective treatments, untreated extreme structural abnormalities, out of control symptoms, or objective clinical signs indicative of functional deficits beyond light exertional effort."   (Tr. 28.)

Following the ALJ's decision, Payne submitted an additional Medical Source Statement from Dr. Parker, dated January 28, 2021, to the Appeals Council.   (Tr. 13-15.)   When the Appeals Council considers new evidence but denies review, this Court must determine "whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the

new evidence."  *Id.*   "In practice, this requires this court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing."  *Bergmann v. Apfel*, 207 F.3d 1065, 1067 (8th Cir. 2000).

In his second opinion, Dr. Parker increased Payne's lifting limitation to twenty pounds rarely (from ten pounds), and occasionally up to ten pounds.   (Tr. 14.)   He found Payne could never twist, stoop, balance, crouch, or crawl, compared to his earlier opinion finding he could "rarely" engage in these postural activities.  *Id.*   Additionally, Dr. Parker indicated that Payne could sit and stand a total of less than two hours each during an eight-hour workday.  *Id.*   Payne should elevate his legs for fifteen percent of the workday, down from 25 percent in his previous opinion.   (Tr. 15.)   Dr. Parker listed Payne's diagnoses as cervical spondylosis, failed back syndrome, and low back pain.   (Tr. 13.)   Dr. Parker explained that Payne has severe neck and low back pain, fatigue, and arm and leg pain.  *Id.*   He stated that Payne's neck and low back pain is activity-related and is severe and constant.  *Id.*   Dr. Parker provided the following clinical findings in support of his opinion:   Payne has painful neck and low back range of motion which is very restricted; and he has neck and low back tenderness.

The undersigned finds that the ALJ's explanation for finding Dr. Parker's opinions unpersuasive lacks the support of substantial evidence.   The ALJ found that Payne's pattern of treatment with Dr. Parker shows that the surgeries were generally effective in treating his symptoms.   He explains that the recurrent nature of the surgeries was not due to failure, but due to the development of new symptoms.   While these statements may be true, they do not serve to discredit Dr. Parker's opinions regarding Payne's functional limitations.   The ALJ's own summary of Dr. Parker's treatment notes reveals that Payne sought regular treatment for his orthopedic impairments from Dr. Parker during the relevant period.   At each visit, he

complained of either neck pain, low back pain, or both.   Imaging ordered by Dr. Parker confirmed Payne's allegations.   On examination, Dr. Parker regularly noted limited range of motion of the cervical and lumbar spine.    Dr. Parker, an orthopedic surgeon, performed two cervical fusions and one lumbar fusion in a period of approximately sixteen months.   Dr. Parker's treatment of Payne's orthopedic impairments was not conservative.   The fact that each surgery appeared to be successful is not inconsistent with continued functional limitations.   Dr. Parker's second opinion reveals that Payne continued to experience significant pain and limited range of motion despite his "successful" surgeries.

The ALJ also found that Dr. Parker's opinions were not fully consistent with the other medical evidence of record.   (Tr. 30.)   The ALJ did not, however, cite to specific evidence that contradicted Dr. Parker's opinions.   The undersigned has already found that Dr. Parker's opinions were consistent with his own treatment notes, as well as the many imaging reports documenting severe degenerative changes of the cervical spine with bilateral foraminal stenosis (Tr. 423, 612), and severe degenerative changes of the lumbar spine (Tr. 486, 488).

The only other treating source to provide an opinion was William David Myers, D.O., in a January 2020 Medical Source Statement.   (Tr. 558-60.)   Dr. Myers also found that Payne had significant limitations, including postural limitations; could only sit for thirty minutes at a time for a total of two hours in an eight-hour workday; could stand for ten minutes at a time and could stand for less than two hours out of an eight-hour workday; required four unscheduled fifteen-minute breaks each workday due to pain and muscle weakness; would be off task up to 25 percent of the day; and would miss work or leave early up to four days per month.   *Id.*   Dr. Myers' opinion is, therefore, supportive of Dr. Parker's opinion.

Accordingly, the ALJ's determination that Dr. Parker's opinion was unpersuasive is not supported by substantial evidence.

**2. RFC**

Payne next argues that the RFC formulated by the ALJ is not supported by substantial evidence.

The ALJ found that Payne had the RFC to perform light work with the following additional limitations: no more than occasionally climb ramps, stairs, ladders, ropes, or scaffolds; no more than occasionally reach overhead with the bilateral upper extremities; no more than occasionally stoop, crouch, or crawl; able to perform work that does not require more than frequent extension, flexion, or rotation of the neck; and lighting must be no brighter than found in the average office.   (Tr. 25.)

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

After discrediting the opinions of Payne's treating sources, the ALJ indicated that he found the prior administrative medical findings of Dennis McGraw, D.O., a state agency medical consultant, persuasive.   (Tr. 29.)   On December 3, 2019, Dr. McGraw expressed the opinion that Payne could occasionally lift or carry twenty pounds, and frequently lift or carry ten pounds; stand or walk a total of six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday; occasionally climb ladders and ropes, stoop, kneel, crouch, and crawl; and should avoid even moderate exposure to hazards such as machinery and heights.   (Tr. 101-02.)

The ALJ explained that Dr. McGraw's findings are "corroborated by a lengthy explanation with numerous references to and discussion of the medical record of evidence, which reflects significant supportability and increases their persuasiveness."   (Tr. 29.)   He further found that Dr. McGraw's opinions were consistent with the medical evidence of record, "particularly as discussed above, the claimant's ongoing but successful pattern of treatment, partially supportive objective testing, and partially supportive diagnostic testing or imaging.." *Id.*   Finally, the ALJ stated that, although Dr. McGraw only references the evidence through December 2019, the medical record of evidence reflects that Payne "had continued but successful treatment without evidence of significant worsening after Dr. McGraw rendered his opinions."   *Id.*

The ALJ's finding that the medical evidence did not show significant worsening after Dr. McGraw rendered his opinion in December 2019 is not supported by the record.   On December 11, 2019, Payne complained that his neck pain was getting worse.   (Tr. 599.)   Dr. Parker noted that x-rays revealed severe degenerative changes at C3-4, C4-5, and C5-6, below his previous fusion.   *Id.*   In May 2020, Payne complained of severe pain in his neck, with some pain into his shoulders.   (Tr. 605.)   Payne stated that he did not feel like he can live with his current level of

pain.   (Tr. 607.)   Payne underwent a MRI of the cervical spine on May 28, 2020, which
revealed severe degenerative changes at C3-4, C4-5, and C5-6, and bilateral foraminal stenosis at
these levels.   (Tr. 612.)   On June 3, 2020, Payne complained of severe pain in his neck that
radiated into both shoulders and his upper arms.   (Tr. 612.)   He indicated he would like to
proceed with surgery, as his pain was "quite unbearable."   *Id.*   Payne underwent a cervical
discectomy and fusion at C3-4, C4-5, and C5-6 on August 25, 2020.   (Tr. 630.)   In light of this
evidence demonstrating worsening in Payne's neck pain and symptoms which led to a multi-
level fusion surgery, the ALJ's finding that the record shows no significant worsening after Dr.
McGraw's December 2019 opinion lacks support.   Further, Dr. McGraw was not able to review
Dr. Parker's opinion—provided in February 2020—which found greater limitations than those
found by Dr. McGraw.

The undersigned finds that the RFC formulated by the ALJ lacks the support of
substantial evidence.   Payne's treating physicians both found that Payne was more limited than
found by the ALJ.   As previously discussed, the ALJ erred in evaluating Dr. Parker's opinion
and in relying on the unsupported opinion of the non-examining state agency medical consultant.
The undersigned acknowledges that the ALJ was "not required to rely entirely on a particular
physician's opinion or choose between the opinions [of] any of the claimant's physicians."
*Martise*, 641 F.3d at 927.   The RFC formulated by the ALJ, however, lacks the support of
substantial evidence.   The ALJ failed to point to medical evidence supporting his determination
that Payne is capable of performing light work on a sustained basis despite his continued
limitations following his multiple back and neck surgeries.

**<u>Conclusion</u>**

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order.   Upon remand, the ALJ must properly evaluate Dr. Parker's opinions, obtain additional evidence if necessary, and formulate an RFC supported by substantial evidence.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2022.